## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### CASE NO. 3:24-cv-00823-TJC-MCR

JOHN SAMUEL BROOKS,
individually and
on behalf of all others similarly situated,      **CLASS ACTION**

      Plaintiff,      **JURY TRIAL DEMANDED**

v.

PARKING REVENUE RECOVERY
SERVICES, INC.,

      Defendant.

_____/

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff John Samuel John brings this class action against Defendant Parking Revenue Recovery Services, Inc., and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.   This is a putative class action for violations of the Driver's Privacy Protection Act, 18 U.S.C. § 2721-2725 ("DPPA").

2.   In violation of the DPPA, Defendant knowingly and without consent obtained Plaintiff's and the Class Members' personal information, including their names and home addresses, from non-public motor vehicle state records, and used it to send parking tickets to Plaintiff's and the Class Members' homes.

1

3.      Defendant's DPPA violations caused Plaintiff and the Class Members harm, including violations of their statutory privacy rights, harassment, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion in a space that is personal and private to Plaintiff and the Class Members.

4.      Plaintiff seeks, on behalf of himself and each member of the proposed Class, statutory damages under the DPPA in the amount of $2,500, reasonable attorney's fees and other litigation costs reasonably incurred, and such other equitable relief as the court determines appropriate, including injunctive relief in the form of a prohibition on Defendants obtaining, using and disclosing personal information obtained from any department of motor vehicles ("DMV") to send surprise tickets through the mail to consumers' residences.

## PARTIES

5.      Plaintiff is, and at all times relevant hereto was, a citizen and resident of Duval County, Florida.

6.      Defendant is, and at all times relevant hereto was foreign corporation with its headquarters located in Centennial, Colorado. Defendant may be served through its registered agent, Incorp Services, Inc., at 3458 Lakeshore Drive, Tallahassee, FL 32312.

## JURISDICTION AND VENUE

7.      This Court has federal question subject matter jurisdiction over Plaintiff's DPPA claims pursuant to 28 U.S.C. § 1331.

2

8.     Defendant is subject to personal jurisdiction in Florida because it transacts business throughout the state of Florida, and its violations alleged herein occurred in part within and/or were directed at Florida.

9.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE DPPA

10.     DPPA was enacted in 1994 to protect the privacy of licensed drivers, and to limit misuse of personal information contained within DMV records. The DPPA imposes strict rules for collecting personal information contained within DMV records, and imposes liability for the collection and/or use of such personal information. *See generally* 18 U.S. Code § 2721, et al.

11.     Specifically, the DPPA provides: "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."

12.     "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

3

13.    "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C § 2725(1).

14.    The fourteen (14) permissible uses of personal information under the DPPA are as follows:

> (1) For use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions.
>
> (2) For use in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities, including survey research; and removal of non-owner records from the original owner records of motor vehicle manufacturers.
>
> (3) For use in the normal course of business by a legitimate business or its agents, employees, or contractors, but only-
>
>> (A)    to verify the accuracy of personal information submitted by the individual to the business or its agents, employees, or contractors; and
>>
>> (B) if such information as so submitted is not correct or is no longer correct, to obtain the correct information, but only for the purposes of preventing fraud by, pursuing legal remedies against, or recovering on a debt or security interest against, the individual.
>
> (4) For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement

of judgments and orders, or pursuant to an order of a Federal, State, or local court.

(5) For use in research activities, and for use in producing statistical reports, so long as the personal information is not published, redisclosed, or used to contact individuals.

(6) For use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.

(7) For use in providing notice to the owners of towed or impounded vehicles.

(8) For use by any licensed private investigative agency or licensed security service for any purpose permitted under this subsection.

(9) For use by an employer or its agent or insurer to obtain or verify information relating to a holder of a commercial driver's license that is required under chapter 313 of title 49.

(10) For use in connection with the operation of private toll transportation facilities.

(11) For any other use in response to requests for individual motor vehicle records if the State has obtained the express consent of the person to whom such personal information pertains.

(12) For bulk distribution for surveys, marketing or solicitations if the State has obtained the express consent of the person to whom such personal information pertains.

(13) For use by any requester, if the requester demonstrates it has obtained the written consent of the individual to whom the information pertains.

(14) For any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety.

5

## FACTS

15.     Defendant manages private parking lots throughout Florida and the United States.

16.     Defendant installs license plate recognition cameras within the parking lots it manages. These cameras capture the license plates of vehicles entering and leaving the private parking lots Defendant manages.

17.     When Defendant determines that a parking charge is due, the vehicle owner's data is requested from the DMV and a parking charge is sent to the individual's home.

18.     On or about May 5, 2022, Plaintiff parked his vehicle at a parking lot managed by Defendant, located at 125 North Broad Street, Jacksonville, Florida.

19.     Approximately two weeks after, Defendant sent a letter asserting a purported "parking notice" to Plaintiff's residence demanding payment of $80.00.

20.     Defendant's letter included photos of Plaintiff's vehicle's license plate taken by Defendant's license plate recognition cameras.

21.     Plaintiff never provided his name or home address to Defendant.

22.     Plaintiff never authorized Defendant to obtain his personal information from any motor vehicle record.

23.     Defendant knowingly obtained and used Plaintiff's personal information from a record maintained by the DMV by cross referencing Plaintiff's license plate with vehicle registration data maintained by the DMV. This occurred without Plaintiff's authorization or consent.

6

24.    Defendant's obtainment, disclosure, and/or use of personal information from Plaintiff's motor vehicle records was not for any enumerated purpose.

25.    Defendant is not a government agency.

26.    Defendant was not acting on behalf of a Federal, State, or local agency in carrying out its functions when it obtained, disclosed, and used Plaintiff's personal motor vehicle record information.

27.    Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information in connection with matters of motor vehicle or driver safety and theft; motor vehicle emissions; motor vehicle product alterations, recalls, or advisories; performance monitoring of motor vehicles, motor vehicle parts and dealers; motor vehicle market research activities; or removal of non-owner records from the original owner records of motor vehicle manufacturers.

28.    Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information to verify the accuracy of personal information submitted by Plaintiff to Defendant or Defendant's agents, employees, or contractors.

29.    Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information for use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, or the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

30.     Defendant did not intend to obtain, disclose, or use Plaintiff's personal motor vehicle record information for potential use in future legal proceedings against Plaintiff. Defendant obtained, disclosed, and used Plaintiff's personal motor vehicle record information solely to send demand letters for payment to Plaintiff's home.

31.     Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information for use in research activities, or for use in producing statistical reports.

32.     Defendant is not an insurer, insurance support organization, or by a self-insured entity, and was not acting in connection with claims investigation activities, antifraud activities, rating or underwriting when it obtained, disclosed, and/or used Plaintiff's personal motor vehicle record information.

33.     Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information for use in providing notice to Plaintiff that Plaintiff's vehicle had been towed or impounded.

34.     Defendant is not a licensed private investigative agency or licensed security service.

35.     Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information to obtain or verify information relating to a holder of a commercial driver's license.

36.     Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information for use in connection with the operation of private toll transportation facilities.

37.    No state or motor vehicle department secured Plaintiff's express consent to provide Plaintiff's personal motor vehicle record information to Defendant.

38.    Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information for bulk distribution for surveys, or marketing or solicitations.

39.    Defendant did not obtain Plaintiff's written consent to obtain, disclose, or use Plaintiff's personal motor vehicle record information.

40.    Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information for use related to the public's safety.

41.    Defendant did not obtain, disclose, or use Plaintiff's personal motor vehicle record information for use related to the operation of Plaintiff's motor vehicle. To the contrary, Defendant's obtainment, disclosure, and/or use Plaintiff's personal motor vehicle record information was related to the parking (i.e., non-operation) of Plaintiff's motor vehicle.

42.    No state statute authorized Defendant to use license plate readers and to obtain, disclose, or use Plaintiff's personal motor vehicle record information without Plaintiff's consent or authorization.

43.    Upon information and belief, including based on prior lawsuits against Defendant involving similar conduct, Defendant regularly engages in the practice of utilizing license plate recognition cameras to capture vehicle license plates, and then uses those license plate numbers to acquire, without authorization or consent, the personal

information of individuals that park their vehicles in lots managed by Defendant from DMVs around the country.

44.   After acquiring personal information from the DMVs, Defendant impermissibly utilizes the information to send parking notices to consumers' homes.

45.   Plaintiff has never publicly disclosed or made publicly available the personal motor vehicle record information acquired by Defendant.

46.   Defendant knowingly obtained, disclosed and/or used Plaintiff's personal motor vehicle record information for a purpose not permitted under the DPPA.

47.   Defendant knowingly obtained and disclosed Plaintiff's personal motor vehicle record information for a purpose not permitted under the DPPA to one or more of Defendant's vendors utilized by Defendant to prepare and mail its parking notice to Plaintiff.

48.   Defendant harassed and invaded Plaintiff's privacy and solitude by obtaining, disclosing, and using Plaintiff's personal and private motor vehicle record information.

49.   Defendant harassed and invaded Plaintiff's privacy and solitude by disclosing Plaintiff's personal and private motor vehicle record information to Defendant's vendor(s).

50.   Defendant's conduct and DPPA violation caused Plaintiff and the Class Members harm, including violations of their statutory privacy rights, harassment, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion in a space that is personal and private to Plaintiff and the Class Members.

## CLASS ALLEGATIONS

### PROPOSED CLASS

51.     Plaintiff brings this lawsuit as a class action on behalf of Plaintiff individually and on behalf of all other similarly situated persons as a class action pursuant to Federal Rule of Civil Procedure 23. The Class that Plaintiff seeks to represent is defined as:

> **All individuals residing in the United States whose personal information Defendant obtained, disclosed, and/or used from a motor vehicle record during the four years prior to the filing of this lawsuit through the date of class certification**.

52.     Defendant and its employees or agents are excluded from the Class.

### NUMEROSITY

53.     Plaintiff is informed and believes that there are at least 50 class members given Defendant's regular use of DMV records to locate consumers without their consent and not for a purpose enumerated under the DPPA.

54.     Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### COMMON QUESTIONS OF LAW AND FACT

55.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

> (a) Whether Defendant obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from a motor vehicle record;

(b) Whether Defendant's use Plaintiff's and the Class Members' personal information is permitted under the DPPA;

(c) Whether Defendant knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from a motor vehicle record; and

(d) Whether Defendant is liable for damages, and the amount of such damages.

56.     The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

57.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

58.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

59.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. The likelihood of individual Class members prosecuting their own separate claims is remote,

and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

60.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**Violation of 18 U.S.C. § 2721, *et seq.***
**(On Behalf of Plaintiff and the Class)**

61.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

62.     Under the DPPA, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains."

63.     "Personal information" under the DPPA "means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725(3).

64.    "Motor vehicle record" is defined to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles[.]" 18 U.S.C § 2725(1).

65.    Plaintiffs and Class Members are individuals within the meaning of 18 U.S.C. §2725(2).

66.    Plaintiff's and the Class Members' names and addresses are personal information under the DPPA.

67.    Defendant knowingly obtained, disclosed, and/or used Plaintiff's and the Class Members' personal information from motor vehicle records without consent or authorization.

68.    Defendant violated the DPPA by knowingly obtaining, disclosing, and/or using Plaintiff's and the Class Members' personal information from motor vehicle records for a purpose not permitted under the DPPA, i.e., to cross-reference their license plates and send parking notices to Plaintiff's and the Class Members' homes.

69.    Defendant's DPPA violations and notices sent by Defendant caused Plaintiff and the Class Members harm, including violations of their statutory privacy rights, harassment, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion in a space that is personal and private to Plaintiff and the Class Members.

70.    Pursuant to the DPPA, Plaintiff and the Class Members seek: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with DPPA's

requirements; (iii) statutory damages of $2,500 for each violation of the DPPA pursuant to 18 U.S.C. § 2724(a) and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages of $2,500 of each violation of the DPPA for Plaintiff and each member of the Class as permitted under the DPPA;

c) An order declaring that Defendant's actions, as set out above, violate the DPPA;

d) An injunction requiring Defendant to cease all future violations of the DPPA;

e) Attorney's fees and costs incurred in the prosecution of this action; and

f) Such further and other relief as the Court deems necessary.

## **JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

DATED: September 9, 2024

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo\**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*\*Lead Counsel for Plaintiff*

**DAPEER LAW P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039 20900 NE 30th Ave.
Suite 417
Aventura, FL 33180
T: 305-610-5223
rachel@dapeer.com